FORT SMITH *v*. GIANT MANUFACTURING COMPANY.

4-3718

Opinion delivered February 25, 1935.

*Fadjo Cravens,* for appellant.

*Roy Gean,* for appellee.

MEHAFFY, J. Prior to 1928 the city of Fort Smith had issued bonds for the purpose of raising funds to acquire and equip parks and playgrounds for said city. After the bonds were authorized and sold, the city of Fort Smith passed an ordinance creating a board of park commissioners, to be known as the Park Board, to control and supervise the use and operation of the public parks in the city of Fort Smith, prescribing the powers and duties of said board and providing for the appointment of members thereof.

On April 10, 1931, the Park Board ordered from appellee, by written order, certain floodlights for illuminating Andrew's Field, one of the parks under the jurisdiction of the Park Board created by said ordinance. The order directed the appellee to ship the floodlights to the Fort Smith Park Board, at Fort Smith. The purchase price was $2,400. The appellee retained title to the property until paid for. Of the purchase price, $300 was paid in cash by the city of Fort Smith, and the Park Board executed a note for $2,100 to be paid December 1, 1931. This note was not paid when due, and on February 22, 1932, the Park Board executed its note to appellee in the sum of $2,100, due five months after date. The note was signed Fort Smith Park Board, by Henry C. Armstrong, president, and Harry Robinson, secretary.

The city of Fort Smith is not mentioned in the contract. The city of Fort Smith operates under a commission form of government, and the members of the Park Board and commissioners of the city held meetings, and it was decided to purchase the floodlights; the Park Board was authorized to purchase same; entered into the contract above mentioned; the city of Fort Smith paid the $300 cash payment, and has had the possession and use of the lights, and still has them and is still using them.

Under the ordinance creating a board of park commissioners, it is provided that the board shall consist of five persons; the Commissioner No. 2 of the city of Fort Smith as an ex-officio member, and four other persons. The ordinance provides that the members of said Park Board may be removed by the city commission. The ordinance further provided that the board shall have power to supervise and control the operation and use of certain parks, naming them. But it is provided that the board shall have power to promulgate and enforce reasonable rules and regulations governing the use and operation of the parks and playgrounds under its authority, but that they shall not have authority to permit the use of any park or playground except Andrews Field for public meetings of any kind of public entertainment or amusement. It is further provided that Andrews

Field may be used by schools of the city without charge, except when used for contests or entertainments.to which the public is admitted only upon the payment of an admission fee, and the board has authority to exact a reasonable percentage of the gate receipts. The Park Board has authority under the ordinance to grant concessions for considerations agreed upon, for the furnishing of refreshments, etc.

It is expressly provided that all funds collected by the Park Board shall be immediately deposited with the city treasurer, who shall keep the same in a special fund, known as the Park Fund, and that such fund shall be expended only for the purchase, operation, maintenance or improvement of the parks. The board is permitted to expend not exceeding $100 per month out of the park fund for things necessary to the operation of parks, but expenditures involving more than $100 can be made only pursuant to an ordinance or resolution of the city commission authorizing the same. The ordinance also expressly provides: "The Park Board shall have no power to make any contract for the expenditure of money out of the park fund, unless there is sufficient unappropriated moneys in that fund to meet such expenditures; and the City Commission shall not appropriate moneys out of the general revenue of the city for the maintenance and operation of the parks."

All moneys paid from said funds must be upon vouchers issued upon the authority of the Park Board, or pursuant to an ordinance or resolution of the City Commission.

The balance of the purchase price of the lights, $2,100, was not paid, and the appellee brought suit against the city of Fort Smith, the Fort Smith Park Board, and the members of the Park Board. This suit was filed September 16, 1932. Separate answers were filed denying liability. The cause was submitted to the trial court without a jury, and each party requested finding of facts and declarations of law. Certain findings of fact requested by the parties were given, and others refused. Some of the declarations of law were given, and others refused. The court found in favor of the

Park Board and members of the Park Board, and found in favor of the appellee against the city of Fort Smith. The appellant prosecutes an appeal to reverse the judgment against the city, and the appellee has also appealed and seeks a reversal of the judgment in favor of the Park Board.

The written contract in this case was not signed by the appellant, and its name is not mentioned in the contract. The Park Board was created by an ordinance, and the ordinance expressly provides that the members of the Park Board may be removed by the city of Fort Smith. The Park Board is given power by said ordinance to supervise and control the operation and use of parks and playgrounds. All the money that it receives must be paid into the city treasury of appellant. The Park Board is prohibited by said ordinance from expending more than $100, and it has no authority to make a contract involving the expenditure of more than that sum. The ordinance does not provide in whose name the board shall make contracts that it is authorized to make.

It is argued that the contract made in this case is void and unenforceable, and that the appellee knew that, and knew the powers possessed by the board when it made the contract. The appellant also knew the powers of the board, and, if it had no authority to make this contract, the appellant knew it. The appellant stated in its answer that the Park Board had no authority to enter into the contract. Conceding all this to be true, the evidence shows that meetings were had by the board members with the City Commissioners, and the lights were purchased for the use and benefit of the city. The city still possesses them and is still using them. One of the findings of fact requested by the appellee is as follows: "That there was sufficient revenue, at the time of the purchase mentioned in the complaint, in the treasury of the city of Fort Smith to the credit of the park fund, which was raised by a bond issue voted by the people of Fort Smith, for the purchase of the floodlights, and that, after the purchase of said floodlights, the city of Fort Smith used said funds for purposes other than

park purposes, and not for the purpose of paying appellee."

The court also made the following finding of fact at the request of appellant:

"That Cecil Magruder represented plaintiff in the negotiations in connection with the purchase of the equipment referred to in plaintiff's complaint, and that it was disclosed to the said Magruder, and that the said Magruder knew, as a result of such disclosure at and before the execution of said contract and note, that said Park Board was an agent of the city of Fort Smith, and that said board, in executing said contract and note, was in fact acting for and on behalf of said city as the latter's agent in entering into the contract aforesaid, and in executing the note above mentioned."

There is some conflict in the authorities as to whether a suit can be maintained by one not named in the contract, but R. C. L. states the rule as follows: "Stated in general terms, and leaving out of view the limitations recognized in various jurisdictions, the rule is that a third person may enforce a promise made for his benefit, even though he is a stranger both to the contract and to the consideration. In other words, it is not necessary that any consideration move from the third party; it is enough if there is a sufficient consideration between the parties who make the agreement for the benefit of the third party. This doctrine, originally an exception to the rule that no claim can be sued upon contractually unless it is a contract between the parties to the suit, has become so general and far-reaching in its consequences as to have ceased to be simply an exception, but is recognized, within certain limitations, as an affirmative rule." 6 R. C. L. 884.

The Park Board was merely an agent or trustee for the city, with certain duties prescribed by the ordinance, with no power to do anything other than the things mentioned in the ordinance. If this contract were void or unauthorized, still the city could not keep the property and refuse to pay for it. This court said recently: "The city also ratified the unauthorized acts of its agents, if unauthorized, by accepting, keeping, and using the fire

hose, and it would do violence to one's sense of common honesty and fair dealing to hold that collections could not be enforced, because of mere irregularities in making the contract, or that the agent exceeded his authority in doing so." *Fort Smith* v. *United Rubber Co.*, 184 Ark. 588, 42 S. W. (2d) 1004. The court in that case also said:

"The city, however, kept the machinery and continued to use it. The court held that, inasmuch as the contract was one within the power of the municipality to make, although it was made without authority, it could not retain the machinery, use it, and at the same time defeat a lien for the price thereof."

"The obligation to do justice rests on all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation. * * * For this reason it seems that if, by mistake of law, a bridge is built upon a public highway under a contract which does not bind the county, and payment is refused on that ground, the county, if it does not intend to accept and pay for the work, should, as a matter of justice, permit the party constructing the bridge to remove it, and get what benefit may be had from the materials he has furnished, when the removal can be effected without injury to the public. In other words, it should not retain the materials and use the structure, and refuse to pay the value thereof, when that result can reasonably be avoided." *Howard County* v. *Lambright*, 72 Ark. 330, 80 S. W. 148.

The city had issued bonds, and at the time this contract was made, had a sufficient amount of money on hand from the park fund to pay this indebtedness. All the money collected by the Park Board was paid into the city treasury. The city has possession of the property, and is using it, and the obligation rests on it, as it would on any natural person, to pay for property under such circumstances.

In the trial of this case, no commissioner testified, and no one disputes the justness of the claim. And, since the contract was made for the benefit of the city of Fort Smith, and it retains and uses the property, it should, in justice, be made to pay for it.

The appellee prosecutes appeal against the Park Board. The Park Board was merely trustee for the city, and the appellee knew this. Moreover, it has no money as a Park Board, and simply performs its duties in obedience to the directions of the city of Fort Smith, by whom its members may be discharged at any time.

The judgment of the court is correct, and is therefore affirmed.