The Honorable Jim Holt State Senator 2935 South 56th Street Springdale, AR 72762-0844
Dear Senator Holt:
I am writing in response to your request for my opinion regarding the following three questions:
 1. Can an Arkansas county quorum court enter into a binding contract for 10 years or more for services rendered from a private facility?
 2. Can a county enter into such a contract without a term that provides them an out due to a lack of appropriations of funds?
 3. Can a private sector provider bring litigation against a county for specific performance due to non-payment on a contract that meets the above question parameters?
RESPONSE
With respect to your first and second questions, only a finder of fact could determine the permissibility of such a contract after reviewing the actual contract. It is my opinion, in response to your third question, that an action for specific performance would likely fail in the case of a contract that is void because of the constitutional restriction against exceeding current revenues. Whether amounts payable under a particular county contract are in excess of the amounts permitted under the Arkansas Constitution is a question of fact which must be answered in light of all the relevant facts and circumstances. This office is neither equipped nor empowered to make the factual inquiry and findings necessary to reach a conclusion on such questions.
Question 1: Can an Arkansas county quorum court enter into a bindingcontract for 10 years or more for services rendered from a privatefacility?
A county contract of a term longer than a fiscal year may be in violation of Arkansas Constitution Article 12, section 4. This constitutional provision generally prohibits counties from incurring indebtedness in excess of revenues for the fiscal year in which the contract was made. It provides in part:
 The fiscal affairs of counties, cities and incorporated towns should be conducted on a sound financial basis, and no county court or levying board or agent of any county shall make or authorize any contract or make any allowances for any purposes whatsoever in excess of the revenue from all sources of the fiscal year in which said contract or allowance is made; nor shall any county judge, county clerk or other county officer, sign or issue any scrip, warrant or make any allowance in excess of the revenue from all sources for the current fiscal year. . . . Ark. Const. art. 12, § 4, as amended by Ark. Const. amend. 10.
Contracts in violation of art. 12, § 4 are void. Warren v. State,232 Ark. 823, 340 S.W.2d 400 (1960).
A factual inquiry on a case by case basis would be necessary in order to determine whether this constitutional provision limits the length of a particular service contract entered into by a county. Multi-year contracts entered into by counties or cities are not per se unconstitutional. SeeGovernment Service Automation, Inc. v. Faulkner County,929 F. Supp. 338, 341, (E.D. Ark. 1995). As explained in Government ServiceAutomation, Inc.:
 What is prohibited by [art. 12, § 4] are contracts in an amount which `exce[eds] . . . the revenue . . . for the fiscal year in which said contract . . . is made;. . . .' Art. 12, § 4. In cases requiring the interpretation of that part of the Constitution, the Supreme Court has consistently held that contracts made in one year which must be paid for with the revenues of a subsequent year are prohibited." To make a contract in one year to be paid out of the revenue of a succeeding year is a violation of [the Constitution]." Goodwin v. State, 235 Ark. 457, 360 S.W.2d 490, 494 (1962), citing Little Rock v. White Company, 193 Ark. 837, 103 S.W.2d 58 (1937).
The party seeking to void a contract under art. 12, § 4 bears the burden of showing that it was unconstitutional. See Dailey v. City of LittleRock, 227 Ark. 537, 539, 299 S.W.2d 825, (1957) (stating that "[t]he burden was on the appellant to show that performance of the agreement would require an expenditure of revenues by the City in excess of those for the year in which the contract was made.") It should be noted in this regard that certain factors may come into play in determining whether the constitutional provision applies in the particular circumstances. For instance, one of my predecessors opined that while the question is not free from doubt, "a court likely would hold that a lawfully issued revenue obligation, payable solely from amounts arising from the activity financed by the obligation, is not subject to the limitations of Ark. Const. art. 12, § 4." Ark. Op. Att'y Gen. 96-063 (see opinion for analysis). I agree with this analysis. As also noted in Op. 96-063, however, "[t]he question of whether the insertion of any particular language into a specific obligation would cause it to be a revenue obligation not subject to the limitations of Ark. Const. art. 12, § 4, and whether the obligation is otherwise lawfully issued, are, of course, questions of fact. . . ." Id. Such questions must be determined in the first instance by the county, with the aid of its counsel.
The question may also arise whether funds for the first fiscal year of the contemplated contract are available at the time of contracting. Cf.Government Service Automation, Inc. Another factor to consider is whether payment and performance obligations for succeeding fiscal years are subject to the availability and appropriation of funds therefor. The Arkansas Supreme Court has explained the purpose and effect of art. 12., § 4, by stating that it is the intention of this constitutional provision ". . . to make the revenue of each year pay the indebtedness incurred during that year, and that the revenue of a subsequent year should not be applied to pay the liability of a past fiscal year. . . ." Lake v. Tatum,175 Ark. 90, 93, 1 S.W.2d 554 (1928) (emphasis added). See also LittleRock Road Machinery Co. v. Jackson County, 223 Ark. 53, 342 S.W.2d 407
(1961). Accordingly, the presence of a so-called "opt out" provision is another factor that may affect the validity of your hypothetical contract. Cf. Government Service Automation, Inc.
Question 2 — Can a county enter into such a contract without a term that provides them an out due to a lack of appropriations of funds?
See discussion above.
Question 3 — Can a private sector provider bring litigation against a county for specific performance due to non-payment on a contract that meets the above question parameters?
If it is assumed, as suggested by this question, that the county has entered into a contract that is void because of art. 12, § 4's restriction against exceeding current revenues (an assumption I cannot test because of the fact-intensive nature of the inquiry), then in my opinion an action for specific performance would likely fail. Seegenerally Little Rock Road Machinery Co. v. Jackson County, 233 Ark. 53,342 S.W.2d 407 (1961); Vick Consolidated School District No. 21 v. New,208 Ark. 874, 187 S.W.2d 948 (1945); Fort Smith v. Giant ManufacturingCompany, 190 Ark. 434, 79 S.W.2d 440 (1935); City of Little Rock v. TheWhite Company, 193 Ark. 837, 103 S.W.2d 58 (1937).
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh